UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMEKKA L. BENNETT,

        Case No. _____

      Plaintiff,        Hon. _____

v.

YWCA KALAMAZOO,

      Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Tamekka L. Bennett, by and through counsel, for her Complaint against Defendant YWCA Kalamazoo, states as follows:

INTRODUCTION

1. This is an employment discrimination, retaliation, interference, and tort action arising from Defendant's unlawful treatment and separation of Plaintiff, a Black woman over the age of forty who served as Associate Director of Health Equity within Defendant's Cradle/Maternal and Child Health Division.

2. Plaintiff engaged in protected activity by raising concerns about inequitable practices, leadership misconduct, safety issues, retaliation, and hostile treatment.

1

3. Plaintiff reported harassment, bullying, leadership misconduct, safety violations including a firearm at work, trauma-related supervisory concerns, unfair internal hiring, client service failures, and retaliation.

4. After Plaintiff engaged in protected activity, Defendant subjected her to escalating adverse treatment, including exclusion from leadership discussions, reassignment of duties, a retaliatory performance-documentation attempt, denial of roles created from her own duties, threatening communications during protected leave, premature email deactivation, and termination.

5. Defendant informed Plaintiff that her position was being eliminated within approximately two hours of Defendant receiving or approving her FMLA documentation.

6. Plaintiff submitted completed FMLA medical certification around 2:00 p.m. on November 18, 2025, and Defendant proceeded with a separation meeting around 4:00 p.m. that same day.

7. Defendant characterized Plaintiff's separation as a restructuring or reduction in force, but Plaintiff's duties continued and were reassigned into newly created roles filled by substantially younger employees.

8. Plaintiff seeks declaratory relief, injunctive relief, reinstatement or front pay, back pay, lost benefits, liquidated damages where available,

compensatory damages, exemplary and punitive damages where available, attorney fees, costs, interest, and all other relief permitted by law.

## PARTIES

9. Plaintiff Tamekka L. Bennett is an individual who resides in Kalamazoo, Michigan.

10. Plaintiff's date of birth is March 22, 1976, making her fifty years old at the time of this filing.

11. Defendant YWCA Kalamazoo is Plaintiff's former employer.

12. Defendant's address is 550 S. Riverview Drive, Parchment, Michigan 49004.

13. Defendant employed the number of employees required for coverage under Title VII, the ADA, the ADEA, the FMLA, and the Michigan Elliott-Larsen Civil Rights Act during the relevant period.

14. Defendant was an employer within the meaning of Title VII, the ADA, the ADEA, the FMLA, and the Michigan Elliott-Larsen Civil Rights Act.

## JURISDICTION AND VENUE

15. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings claims under federal law, including Title VII of

3

the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Family and Medical Leave Act.

16. This Court has supplemental jurisdiction over Plaintiff's Michigan state-law claims under 28 U.S.C. § 1367 because those claims arise from the same facts and employment relationship as Plaintiff's federal claims.

17. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is located in Parchment, Michigan, and the employment practices at issue occurred in Michigan.

ADMINISTRATIVE EXHAUSTION

18. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

19. Plaintiff signed an EEOC Charge of Discrimination on February 24, 2026.

20. The EEOC issued a Notice of Right to Sue, which was transmitted to Plaintiff through counsel on April 10, 2026.

21. Plaintiff files this action within 90 days of receipt of the Notice of Right to Sue and within all applicable limitations periods.

## FACTUAL ALLEGATIONS

22. Plaintiff worked for Defendant as Associate Director of Health Equity in the Cradle/Maternal and Child Health Division.

23. Plaintiff's work included supervising staff, leading maternal and infant health equity initiatives, managing community partnerships, and serving in senior leadership functions.

24. Plaintiff helped lead the inception and development of the Community Doula Program, including creation of the Doula Coordinator role, program infrastructure design, workflow, and implementation planning.

25. Before the retaliatory events escalated, there were no documented performance issues, disciplinary actions, or funding concerns.

26. In June 2025, Plaintiff was directed to prepare a written explanation concerning the non-selection of a qualified employee for an open role.

27. Executive Director Jameca Patrick-Singleton instructed Plaintiff to include "as many details as possible."

28. Plaintiff's written submission exposed inconsistencies and potential misconduct by leadership.

29. Shortly after Plaintiff made that submission, Ms. Patrick-Singleton called Plaintiff after business hours from a personal phone and berated and intimidated her in an over two-hour phone call.

5

30. After that call, Defendant began removing Plaintiff's core responsibilities and excluding her from leadership discussions.

31. Plaintiff was excluded from key leadership discussions, sidelined, and had responsibilities removed or reassigned.

32. Plaintiff's duties were reassigned to younger, less-experienced subordinates who were later elevated to leadership roles.

33. In August 2025, Plaintiff was required to continue supervising an employee whose adult child was involved in the homicide of Plaintiff's cousin.

34. Plaintiff requested reassignment due to trauma and safety concerns, but Defendant, through Ms. Patrick-Singleton, denied that request.

35. In August 2025, Ms. Patrick-Singleton disclosed that she "accidentally" brought a firearm into the workplace and displayed it.

36. Defendant did not conduct a meaningful investigation or corrective action regarding the firearm incident.

37. On August 10, 2025, Plaintiff attended a maternal health town hall on behalf of Cradle.

38. A younger subordinate received four hours of flex time for attending the same event, while Plaintiff was denied equivalent flex time.

39. Plaintiff attended and served as the sole representative of Cradle leadership, including responding to questions from public officials during the panel discussion in the absence of senior leadership.

40. In September 2025, Plaintiff requested HR attendance at a meeting because of ongoing hostility and concerns regarding her treatment by executive leadership.

41. During that meeting, Ms. Patrick-Singleton attempted to issue a coaching document that functioned like a performance improvement plan, despite the fact this meeting was requested by Plaintiff.

42. HR intervened and blocked the proposed coaching document because it had a PIP-like structure, subjective language, and lacked objective performance metrics.

43. In October 2025, two lesser roles were drafted from Plaintiff's workload, including Health Equity Manager and Doula Coordinator, later renamed Doula Manager.

44. Plaintiff authored, personally designed, and drafted the job description and core functions of the Doula Coordinator role.

45. Plaintiff raised concerns with HR about the interview panel, conflicts of interest, and fairness of the selection process.

46. Plaintiff emailed HR on or about October 30, 2025, and texted the HR Vice President on or about November 6, 2025, raising concerns about interview panel composition, conflicts of interest, and fairness.

47. Ms. Patrick-Singleton served on the interview panel for the roles created from Plaintiff's own duties.

48. Plaintiff was the only candidate asked whether she could work under current leadership.

49. Plaintiff interviewed for the roles, but Defendant denied Plaintiff both roles.

50. Plaintiff was not informed of the non-selection at that time.

51. Plaintiff requested and was approved for protected medical leave under the FMLA in late 2025.

52. Plaintiff submitted completed FMLA medical certification to HR at approximately 2:00 p.m. on November 18, 2025.

53. HR acknowledged receipt of Plaintiff's FMLA documentation.

54. Approximately two hours later, Defendant proceeded with a separation meeting.

55. In that meeting, Defendant informed Plaintiff her position was being eliminated within approximately two hours of receiving or approving her FMLA leave documentation.

8

56. During the separation meeting, Defendant informed Plaintiff that she was not selected for either role and presented her with a separation agreement.

57. Defendant separated Plaintiff from employment effective January 2, 2026.

58. At the time Defendant eliminated Plaintiff's position, funding for her role remained in place.

59. Defendant did not restore Plaintiff to the same or an equivalent position after FMLA leave.

60. Defendant did not offer Plaintiff continued employment or placement into available roles created from her duties.

61. Defendant retained younger employees and placed younger employees, some over twenty years younger than Plaintiff, into leadership roles during the restructuring.

62. Plaintiff's duties were reassigned to a newly created Health Equity Manager role filled by a substantially younger employee.

63. Bree Warren, a younger employee, was selected for the Doula Manager role despite previously being denied the position due to lack of required experience.

64. While Plaintiff was on protected leave, HR communications referenced possible termination "for cause."

65. While Plaintiff was on protected leave, HR implied that severance eligibility depended on her compliance and conduct.

66. While Plaintiff was on protected leave and remained an active employee, Defendant deactivated Plaintiff's YWCA email account.

67. The email deactivation caused a communication failure with the State of Michigan related to Plaintiff's participation in the MDHHS Doula Registry.

68. Plaintiff was required to exhaust accrued PTO during her leave.

69. A client independently contacted Plaintiff about an unresolved matter, and Plaintiff forwarded the concern to leadership and HR.

70. Defendant issued Plaintiff a written warning for communicating with clients while on leave, even though Plaintiff did not initiate the contact and routed it appropriately.

71. Defendant imposed restrictive and conflicting communication directives on Plaintiff during her protected leave.

72. Defendant required Plaintiff to route concerns through Ms. Patrick-Singleton even though Plaintiff had complained that Ms. Patrick-Singleton was a source of retaliation and bullying.

73. In or around December 2025, while Plaintiff was still on approved FMLA leave and before her effective separation date, Defendant requested that she return all YWCA-issued equipment, including her badge, keys, phone, laptop, and company credit card.

74. Executive leadership told at least one governing board member that Plaintiff "was laid off" and "would not be returning."

75. At the time of those statements, Plaintiff remained on protected FMLA leave and no separation agreement had been executed.

76. Plaintiff applied for Michigan Unemployment Insurance, but the State issued a preliminary denial based on Defendant's failure to report wages to the State since approximately March 2025.

77. Plaintiff appealed the unemployment determination and worked with UIA to correct Defendant's reporting deficiency.

78. Defendant's conduct caused Plaintiff lost wages, lost benefits, loss of PTO, disruption of unemployment benefits, emotional distress, reputational harm, and health-related damages.

79. Plaintiff's treatment and termination exacerbated her anxiety symptoms.

80. Plaintiff sought medical treatment, including therapy and medication, to manage those symptoms.

11

## COUNT I
## FMLA INTERFERENCE - 29 U.S.C. § 2615(a)(1)

81. Plaintiff incorporates all preceding paragraphs.

82. Plaintiff was an eligible employee under the FMLA.

83. Defendant was an employer subject to the FMLA.

84. Plaintiff was entitled to protected leave under the FMLA.

85. Plaintiff requested and was approved for protected medical leave under the FMLA.

86. Defendant interfered with, restrained, or denied Plaintiff's exercise or attempted exercise of FMLA rights.

87. Defendant interfered with Plaintiff's FMLA rights by deciding to eliminate her position within approximately two hours of FMLA certification, failing to restore her to the same or equivalent position, threatening termination for cause during leave, conditioning severance on leave-related compliance, deactivating her email while she remained active on leave, requiring return of equipment before the effective separation date, and imposing punitive communication restrictions.

88. Defendant's conduct caused Plaintiff damages recoverable under the FMLA, including lost compensation, lost benefits, interest, liquidated damages, attorney fees, costs, and other relief permitted by law.

12

## COUNT II
## FMLA RETALIATION - 29 U.S.C. § 2615(a)(2)

89. Plaintiff incorporates all preceding paragraphs.

90. Plaintiff engaged in protected FMLA activity by requesting, submitting medical certification for, and taking protected medical leave.

91. Defendant knew Plaintiff engaged in protected FMLA activity.

92. HR acknowledged receipt of Plaintiff's completed FMLA medical certification.

93. Defendant subjected Plaintiff to adverse employment actions.

94. Defendant informed Plaintiff her position was eliminated approximately two hours after FMLA certification and separated Plaintiff effective January 2, 2026.

95. During leave, Defendant threatened termination for cause, deactivated Plaintiff's email, warned her about client communication, imposed restrictive directives, and did not restore her to the same or equivalent role.

96. Defendant's adverse actions were causally connected to Plaintiff's protected FMLA activity.

97. Defendant's conduct caused Plaintiff damages recoverable under the FMLA.

13

## COUNT III
## RACE AND COLOR DISCRIMINATION - TITLE VII

98. Plaintiff incorporates all preceding paragraphs.

99. Plaintiff is a Black woman.

100. Plaintiff was qualified for her position and performed effectively.

101. Defendant subjected Plaintiff to adverse employment actions, including stripping duties, excluding her from leadership, denying her roles created from her duties, and terminating her employment.

102. Defendant treated Plaintiff less favorably than similarly situated or comparable non-Black employees, including younger white employees who were retained or selected for newly created roles.

103. The employees selected for newly created roles included Kamiryn Davis Bussel, a younger white employee selected for the Health Equity Manager role, and Bree Warren, a younger white employee selected for the Doula Manager role.

104. Plaintiff's race and color were motivating factors in Defendant's adverse employment actions.

105. Defendant's conduct caused Plaintiff damages.

## COUNT IV
## RETALIATION - TITLE VII

14

106. Plaintiff incorporates all preceding paragraphs.

107. Plaintiff engaged in protected activity by opposing discriminatory, hostile, inequitable, and retaliatory treatment.

108. Plaintiff raised concerns regarding inequitable practices, harassment, retaliation, leadership misconduct, and later filed an EEOC Charge alleging race, color, age, disability, and retaliation claims.

109. Defendant knew Plaintiff engaged in protected activity.

110. After Plaintiff's protected activity, Defendant excluded Plaintiff, stripped duties, attempted a PIP-like coaching document, denied internal roles, threatened termination for cause during leave, deactivated email, and separated Plaintiff.

111. Defendant's adverse actions would dissuade a reasonable employee from engaging in protected activity.

112. Defendant's actions were causally related to Plaintiff's protected activity.

113. Defendant's conduct caused Plaintiff damages.

## COUNT V
## DISABILITY DISCRIMINATION – ADA

114. Plaintiff incorporates all preceding paragraphs.

15

115. Plaintiff had a disability, had a record of disability, or was regarded by Defendant as having a disability.

116. Plaintiff requested and was approved for protected medical leave.

117. Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

118. Defendant subjected Plaintiff to adverse employment actions because of disability or perceived disability, including eliminating her position immediately after FMLA approval, failing to place her in available roles, and terminating her employment.

119. Defendant's conduct caused Plaintiff damages.

## COUNT VI
## ADA RETALIATION

120. Plaintiff incorporates all preceding paragraphs.

121. Plaintiff engaged in ADA-protected activity by requesting medical leave and opposing disability-related adverse treatment.

122. Defendant knew Plaintiff engaged in protected activity.

123. Defendant retaliated against Plaintiff by eliminating her position, threatening termination for cause, deactivating her email, failing to return her to the same or equivalent role, and terminating her employment.

16

124. Defendant's retaliation caused Plaintiff damages.

## COUNT VII
## AGE DISCRIMINATION – ADEA

125. Plaintiff incorporates all preceding paragraphs.

126. Plaintiff was over the age of 40 during the relevant events.

127. Plaintiff was qualified for her role and performed effectively in her role.

128. Defendant removed Plaintiff from a fully funded leadership role and reassigned her duties to younger employees.

129. Defendant retained younger employees and placed them into leadership roles during the alleged restructuring.

130. Defendant's stated restructuring rationale was pretext for age discrimination.

131. Plaintiff's age was the but-for cause of Defendant's adverse employment actions.

132. Defendant's conduct caused Plaintiff damages.

## COUNT VIII
## ADEA RETALIATION

133. Plaintiff incorporates all preceding paragraphs.

134. Plaintiff engaged in protected activity by opposing age-related differential treatment.

135. Defendant knew of Plaintiff's protected activity.

136. Defendant subjected Plaintiff to adverse actions, including denying her internal roles, retaining younger employees, and terminating her employment.

137. Defendant's conduct was causally connected to Plaintiff's protected activity.

138. Defendant's conduct caused Plaintiff damages.

## COUNT IX
## RACE, COLOR, AND AGE DISCRIMINATION - MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

139. Plaintiff incorporates all preceding paragraphs.

140. Plaintiff is protected under the Michigan Elliott-Larsen Civil Rights Act because she is Black, because of her color, and because of her age.

141. Defendant discharged and otherwise discriminated against Plaintiff with respect to employment, compensation, and terms, conditions, or privileges of employment because of race, color, and age.

142. Defendant denied Plaintiff fair consideration for roles created from her own duties and selected substantially younger white employees for those roles.

18

143. Defendant's conduct caused Plaintiff damages.

## COUNT X
## RETALIATION - MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

144. Plaintiff incorporates all preceding paragraphs.

145. Plaintiff opposed violations of the Michigan Elliott-Larsen Civil

Rights Act and participated in protected activity.

146. Plaintiff raised concerns regarding inequitable practices,

discriminatory treatment, retaliation, hostile treatment, unfair internal

hiring, and leadership misconduct.

147. Defendant retaliated against Plaintiff because she opposed unlawful

conduct and engaged in protected activity.

148. Defendant's retaliatory actions caused Plaintiff damages.

## COUNT XI
## HOSTILE WORK ENVIRONMENT - TITLE VII AND MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

149. Plaintiff incorporates all preceding paragraphs.

150. Plaintiff was subjected to unwelcome conduct, including a lengthy

berating call, exclusion from leadership, duty-stripping, disparate flex-

time treatment, forced supervision despite disclosed trauma concerns, a

firearm-related safety incident, a pretextual coaching-document

attempt, punitive leave-period communications, and isolation through restrictive communication directives.

151. The conduct was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment.

152. The conduct was connected to Plaintiff's protected status and protected activity.

153. Defendant knew or should have known of the hostile work environment and failed to take prompt and effective corrective action.

154. Defendant's conduct caused Plaintiff damages.

## COUNT XII
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY - MICHIGAN COMMON LAW

155. Plaintiff incorporates all preceding paragraphs.

156. Michigan public policy prohibits termination for exercising statutory rights, refusing to acquiesce in unlawful conduct, reporting or opposing unlawful conduct, and engaging in protected medical leave and civil rights activity.

157. Defendant discharged Plaintiff because she engaged in protected conduct, opposed unlawful practices, reported misconduct, and exercised protected medical leave rights.

158. Defendant's proffered restructuring rationale was pretextual, contradicted by continued funding, continued operations, new roles, temporal proximity, shifting rationales, and reassignment to white, younger staff.

159. Defendant's wrongful discharge caused Plaintiff damages.

## DAMAGES

160. As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, lost benefits, loss of PTO, loss of retirement contributions, loss of professional opportunities, reputational harm, emotional distress, anxiety exacerbation, medical-treatment expenses, unemployment benefit disruption, and other damages.

161. Plaintiff seeks all remedies permitted by law, including back pay, front pay, reinstatement, lost benefits, liquidated damages under the FMLA where available, compensatory damages, punitive damages where available, exemplary damages where available, equitable relief, declaratory relief, attorney fees, costs, interest, and any other relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tamekka L. Bennett respectfully requests that this Court enter judgment in her favor and against Defendant YWCA Kalamazoo and award the following relief:

A. Declare that Defendant violated Plaintiff's rights under federal and Michigan law;

B. Award back pay, front pay, lost benefits, lost PTO, lost retirement contributions, and all other economic damages;

C. Order reinstatement to a comparable position or, in the alternative, award front pay;

D. Award compensatory damages for emotional distress, humiliation, reputational harm, medical impact, and other non-economic injuries;

E. Award liquidated damages under the FMLA where available;

F. Award punitive and exemplary damages where available;

G. Award attorney fees, litigation expenses, and costs;

H. Award pre-judgment and post-judgment interest;

I. Order equitable relief, including correction of personnel records, neutral reference relief, non-disparagement relief, and appropriate injunctive relief;

J. Award such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: July 7, 2026          Respectfully submitted,

*/s/ Connor B. Gallagher*
Connor B. Gallagher (P82104)
Carla D. Aikens, P.L.C.
615 Griswold St., Suite 709
Detroit, MI 48226
Tel: (844) 835-2993
Fax: (877) 454-1680
connor@aikenslawfirm.com
*Attorneys for Plaintiff*

23